## Case No. 8,053.

### LANE v. RUSSELL.

[4 Cliff. 122;[1] 12 Int. Rev. Rec. 105.]

Circuit Court, D. Massachusetts. May Term, 1870.

CUSTOMS DUTIES—RIBBONS—SILK AND COTTON VELVET RIBBONS.

Silk and cotton velvet ribbons, silk being the component material of chief value, are ribbons within the meaning of section 8 of the act of June 30, 1864 [13 Stat. 210], which provides that there shall be levied, collected, and paid "on all dress and piece silks, ribbons, and silk velvets, or velvets of which silk is the component material of chief value, sixty per centum ad valorem."

[Criticised in Chapon v. Smythe, Case No. 2,-611.]

Merchandise was imported by the plaintiff [David Lane] into the port of Boston, consisting of silk and cotton velvet ribbons, silk being the component material of chief value, and the defendant [Thomas Russell], as the collector of the port, levied a duty thereon of sixty per cent ad valorem. He claimed the right to levy the duty under section 8 of the act of June 30, 1864, which provides that there shall be levied, collected, and paid "on all dress and piece silks, ribbons, and silk velvets, or velvets of which silk is the component material of chief value, sixty per centum ad valorem;" but the plaintiff insisted that the merchandise imported was a manufacture of silk and cotton, not otherwise provided for, of which silk is the component material of chief value, and that it was subject only to a duty of fifty per cent ad valorem, as provided in the last clause of the same section. They paid the excess under protest, and brought an action of assumpsit to recover back the amount beyond what they admit was legally demandable, amounting to $1,049.20 in gold. After the suit was commenced, the parties submitted the case to the court upon an agreed statement of facts, which made a part of the record. Some of the fabrics described in the immediately succeeding sentence of the section, such as pongees, shawls, scarfs, mantillas, &c., the parties agreed were or might be made only in part of silk; and the plaintiffs conceded that the fabrics there enumerated, if silk was the component material of chief value, were legally liable to a duty of sixty per cent ad valorem, as assessed in the case before the court. Ribbons are sometimes made wholly of silk, and sometimes they are made of silk and cotton, wherein silk is the component material of chief value; and the parties agreed that such fabrics are properly called velvet ribbons, and they also agreed that the fabrics constituting the importation in this case were ribbons, that they were not manufactured wholly of silk, that they were velvet ribbons made substantially in the same manner as velvet goods,

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

but differed from piece velvets, as manufactured products, in size, shape, selvedge, use, commercial designation, and the fact that piece velvets were valued and sold by the square yard; and they finally agreed that the complete designation of the imported fabrics is "silk and cotton velvet ribbons, silk chief value."

C. L. Woodbury, for plaintiff.

John C. Ropes, Asst. U. S. Dist. Atty., for defendant.

CLIFFORD, Circuit Justice. Imported ribbons are in express terms subjected to a duty of sixty per cent ad valorem; and the parties agree that the fabrics imported in this case were ribbons, which closes the argument, unless it can be shown that the ribbons imported were not such ribbons as those described in the provision under which the duties were levied, collected, and paid. Ribbons imported from foreign countries are subject to a duty of sixty per cent ad valorem, because such goods are enumerated and provided for in section 8 of the act of congress entitled "An act to increase duties on imports, and for other purposes," which provides that that rate of duty shall be levied, collected, and paid "on the goods, wares, and merchandise enumerated and provided for" in that section. Troost v. Barney [Case No. 14,185]. "Enumerated and provided for," as ribbons are in that section, it is obvious that the fabrics imported in this case—it being admitted that they were ribbons—must certainly be subject to the rate of duty there prescribed, unless it can be shown that the word "ribbons," as employed in that section, is used in some special and limited sense, so as to exclude the goods imported in this case from the operation of that provision. Difficulties attend even that concession, as ribbons are enumerated and declared to be dutiable in express terms at the rate of sixty per cent ad valorem, in the same section. Fifty per cent ad valorem is required to be levied, collected, and paid on manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for; but it is clear that that enactment cannot apply to any of the goods, wares, or merchandise enumerated and provided for in the antecedent part of the section, because the articles there enumerated are, by necessary implication, excluded from the clause imposing duties on articles not so enumerated, and for which no other rate of duty is prescribed. Articles enumerated in the preceding clauses of the section are as effectually excluded from the non-enumerated clause as if the exclusion was enacted in express terms. Velvets are classified in the provision under consideration, as silk velvets and velvets of which silk is the component material of chief value, and it becomes important to inquire why

they were so classified, as both classes are subjected to the same rate of duty.

Fabrics called velvets are sometimes made entirely of silk, and sometimes they are made partly of silk and partly of cotton of different and varying proportions, and sometimes they are made entirely of cotton; and as congress did not intend to include velvets made entirely of cotton, and only a part of those made partly of silk and partly of cotton, it became necessary to make the classification which there appears, to show what description of velvets are, and what are not, intended to be subjected to that rate of duty. Such a classification was necessary to carry into effect the intention of congress in respect to the article of velvet, but it was not necessary in respect to any one of the other thirty or forty articles enumerated in that section, and it should be observed that all the other articles therein enumerated are subjected to a described ad valorem rate of duty. Dress and piece silks, like bleached linens, may have in the warp or woof, or even in both, a fractional per cent of cotton, and still retain the commercial designation expressed in the act of congress, and so may most or all of the other articles enumerated in that section; but it is clear that congress did not intend to encourage the importation of such manufactures by admitting them to entry at a rate of duty less than that imposed on the unmixed and genuine article. Except as otherwise provided, importers of bleached linen have to pay the duty to which the pure article is subjected, though the fabric, as imported, may contain some cotton, and so do importers of most or all of the articles enumerated in the several clauses of the section under consideration in this case. Some of the articles, it is admitted, may be made in part of cotton and yet be legally liable to a duty of sixty per cent ad valorem; and the court is of the opinion that all of the articles in the enumerated list contained in the last two sentences of that part of the section are subject to that rate of duty, even though the article contains some cotton, if silk is the component material of chief value, unless the article is enumerated as an article manufactured of silk and cotton in some other provision of the tariff act, and is there subjected to a different rate of duty. Silk vestings, pongees, shawls, &c., it is conceded by the plaintiff, sometimes have an admixture of cotton; but he denies that any such admixture is ever found in dress and piece silks, as is supposed by the court, and the argument is that the word ribbons must be construed to embrace silk ribbons only, because the word ribbons, as employed in the eighth section of the tariff act, follows, and is associated with, dress and piece silks, which, as they insist, never include any other material than silk. Suppose the fact to be, as assumed by the plaintiff, that dress and piece silks are always free from any admixture of

cotton, which is denied, still the court is of the opinion that the word ribbons cannot properly receive the special and limited construction for which the plaintiff contends. Public policy, national purposes, and the regular operations of government require that the revenue system should be faithfully observed and strictly executed. Priestman v. U. S., 4 Dall. [4 U. S.] 28.

Words and phrases employed in the revenue laws must be understood as having been used in their known commercial signification, unless it satisfactorily appears that they were used in some special and different sense, as collected or inferred from the language of the same provision or some other part of the same act, or from some other act passed in pari materia. Laws imposing duties are passed to raise revenue to provide for the common defence and promote the general welfare, and congress, in framing such laws, must be understood to employ words and phrases according to the general usage and known denominations of trade. Certain Chests of Tea, 9 Wheat. [22 U. S.] 438; Sedg. St. & Const. Law, 388. Congress has the power to lay and collect taxes, duties, imposts, and excises; and, as incidents to that power, they may prescribe the manner in which the duties may be levied and the value of the goods ascertained, and the conditions upon which importations shall be permitted. Revenue laws, or laws imposing duties on imported goods, are intended for practical use and application by men engaged in commerce, and hence it has become a settled rule in the interpretation of such acts of congress to construe the language employed in such laws, and particularly in the denomination of articles, according to the commercial understanding of the terms used. Elliot v. Swartwout, 10 Pet. [35 U. S.] 151; Certain Casks of Sugar, 8 Pet. [33 U. S.] 279; Barlow v. U. S., 7 Pet. [32 U. S.] 404. Such was the express ruling of the supreme court in the case of Curtis v. Martin, 3 How. [44 U. S.] 109, in which Chief Justice Taney, in speaking for the whole court, said that congress, in framing laws imposing duties, must be understood as describing the article upon which the duty is imposed, according to the commercial understanding of the terms used in the law, in our own markets. Borrowing the language employed by the supreme court in the case of Lawrence v. Allen, 7 How. [48 U. S.] 791, "the articles imported in this case manifestly come within the letter of the clause imposing a duty of" sixty per cent ad valorem on ribbons. "They are" ribbons, and, being thus provided for as ribbons, the subsequent clause, admitting non-enumerated articles to entry at a lesser rate of duty, and not enumerating ribbons among them, "cannot be presumed to embrace or refer to any thing already provided for." Whatever weight may be due to these suggestions, still the plaintiffs insist that the word rib-

bons as used in the section means silk ribbons only, because the phrase "dress and piece silks" precedes it, and the word or term "silk velvets" follows it in the sentence where it is employed; but the plaintiff overlooks the fact that the phrase "dress and piece silks" is there used, not in a technical sense as strictly descriptive of the material of which such fabrics are manufactured, but as more particularly expressive of their denomination as commercially known among mercantile men in our markets. Manufactured goods made wholly of silk, it is insisted, are associated together in that section, or at least in that sentence of the section; but the fact is not so, even if it be admitted that dress and piece silks never contain any admixture of cotton, as velvets manufactured partly of cotton and partly of silk are associated in the same sentence, and are in terms subjected, if silk is the component material of chief value, to the same rate of duty. Much less can be inferred in support of the plaintiff's views from what follows in the same sentence, as it is quite apparent that the word "silk," as used before the word "velvets," is employed to classify, or as a part of the means of classifying, the different fabrics of that denomination, so as to show that cotton velvets and all other fabrics of that name, in which silk is not the component material of chief value, are not subjected to the rate of duty therein specified. 13 Stat. 209. Explanations in respect to the articles enumerated in the succeeding sentence of the section, beyond those which have already been given, are unnecessary, as the plaintiff admits in the agreed statement that those articles, or some of them, may contain an admixture of cotton and yet be legally liable to a duty of sixty per cent ad valorem, as therein provided. Tested by these considerations, as the case must be if attentively considered, it is clear that the maxim, "noscitur a sociis," does not control the question of construction, as is supposed by the plaintiff. Unqualified as the word ribbons is by its association, it must be understood in its usual commercial sense, and when so defined, the case is wholly unaffected by the rule adopted in Bend v. Hoyt, 13 Pet. [38 U. S.] 271, on which the plaintiffs rely. They also refer to the clause in the prior act imposing duties on ribbons, and contend that their views find support from that provision; but the court is of a different opinion for several reasons. 12 Stat. 186–293. Dutiable ribbons, it is true, are described as silk ribbons; but that provision is repealed, and the word silk is dropped in section 8 of the subsequent act, which affords a strong argument to show that congress, by using the general word, and without any qualification, intended to include velvet ribbons as well as ribbons manufactured wholly of silk.

Judgment for the defendant, with costs, as agreed by the parties.